## HAZLETT *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

*Argued October 28, 1885.—Decided November 2, 1885.*

A person who, by a contract made with him by the quartermaster's department of the army in behalf of the United States, agrees to furnish all the steamboat transportation required by the United States for officers and soldiers between certain places, and to certain Indian posts and agencies, during a certain time, and to "receive from the officers or agents of the quartermaster's department all such military, Indian and government stores, supplies, wagons and stock, as may be offered or turned over to him for transportation in good order and condition by said officers or agents of the quartermaster's department, and transport the same with dispatch, and deliver them in like good order and condition to the officer or agent of the quartermaster's department designated to receive them," at a certain rate, is not entitled to claim compensation for Indian supplies, never in the charge of the quartermaster's department for transportation, transported between places named in the contract, by another person under a contract between him and the Commissioner of Indian Affairs ; although during the same time some Indian supplies are delivered by the Commissioner of Indian Affairs to the quartermaster's department, and by that department turned over to the claimant for transportation at the rate specified in his contract.

The foundation of this action is a written agreement of February 17, 1870, between the United States and the appellant, who was claimant below, in relation to the transportation by him, at specified rates, of military, Indian, and government stores, supplies, wagons, and stock. [Article I. of the written agreement, on which the controversy arose, was as follows: "Article I. That the said Hiram K. Hazlett shall furnish all the steamboat transportation required by the United States Government for officers and soldiers on the Missouri River, from St. Louis, Mo., Wyandotte and Fort Leavenworth, Kan., and Omaha, Neb., to Sioux City, Iowa, and Fort Benton, M. T., and the posts or Indian agencies between Sioux City and Fort Benton, and which are mentioned in the tabular statement hereto annexed, and from Sioux City, Iowa, Yankton Agency, Fort Randall, Whetstone, Lower Brules, and Crow Creek agen-

cies, Fort Sully, Big Cheyenne, and Grand River agencies, Forts Rice, Stevenson, and Buford, D. T., and Camp Cooke, M. T., to any or all the posts or Indian agencies that are above each respectively, at any time from March 20th, 1870, to October 31st, 1870, and shall receive, at any time during said period, from the officers or agents of the quartermaster's department at St. Louis, Mo., or any point between St. Louis and Fort Benton, mentioned in the tabular statement hereto annexed, all such military, Indian, and Government stores, supplies, wagons, and stock as may be offered or turned over to him for transportation, in good order and condition, by said officers or agents of the quartermaster's department, and transport the same with dispatch, and deliver them in like good order and condition to the officer or agent of the quartermaster's department designated to receive them at Sioux City, Iowa, or any of the posts or Indian agencies above that point mentioned in the annexed tabular statement; all stores, supplies, wagons, and stock to be delivered at their destination within the year eighteen hundred and seventy, it being expressly understood that the contractor shall furnish the required transportation from any of the posts, stations, or Indian agencies mentioned in this article to any post, station, or Indian agency that may be established on the Missouri River between Sioux City, Iowa, and Fort Benton, M. T. (if any one or more of the posts or Indian agencies named in this agreement are situated between the point of departure and the point of delivery), at the rate herein provided for transportation, from the point of departure to the nearest post or Indian agency named in this agreement below the point of delivery, added to the rate to be fixed for the additional distance from such nearest post or Indian agency to the point of delivery—the rate of such additional distance to be the same per mile as from the point of departure to the nearest post or Indian agency named in this agreement to the point of delivery. In case, however, none of the posts or Indian agencies named in this agreement is situated between the point of departure and the point of delivery, then the transportation shall be furnished at the same rate per mile as from the point of departure to the nearest post or Indian agency

named in this agreement above the point of delivery. The distances in all cases are to be determined by the Chief Q. M. Mil. Div., Mo. For the faithful performance of the above service the contractor shall be paid in the manner hereinafter provided in Article XII. of this agreement and at the rates specified and shown in the tabular statement and remarks or memoranda hereto annexed, as signed by the parties to this agreement, which statement and remarks or memoranda are considered a part hereof." A finding of the Court of Claims, which also affects the controversy, will be found in the opinion, *post*, pp. 298-9.]

The appellant received full compensation for all services actually performed by him. But he contended that he was entitled to transport certain Indian stores and supplies, which were delivered, against his protest, to the Northwest Transportation Company for transportation to posts and agencies included in his contract. The supplies and stores last named were transported under a written contract made, without advertisement, by the Commissioner of Indian Affairs, in September, 1870, at higher rates than those allowed the claimant. If they had been transported by him, under his contract, he would have realized a large profit, after deducting what it would have cost to do the work, and also a reasonable sum for being relieved from the care, trouble, responsibility, and risk attending such service. Although fully prepared, and offering, to transport them, the officers of the Indian Bureau refused to turn them over to him. This, he contended, was a breach of his contract. The court below adjudged that the law was with the government, and dismissed the petition, from which judgment the claimant appealed. He now insists that the judgment proceeded upon an erroneous construction of his contract, and was also inconsistent with the practical interpretation given to its provisions by officers of the government immediately charged with its execution.

*Mr. Theodore H. N. McPherson* and *Mr. Enoch Totten* for appellant.—I. The rights of the appellant are to be determined by the provisions of the contract taken in connection with the findings of fact by the Court of Claims.

II. The legal intention of the contracting parties is to be ascertained and determined not only by reference to the contract and the subject-matter of the contract, but also to the surrounding circumstances. *Merriam* v. *United States*, 107 U. S. 437; *Nash* v. *Towne*, 5 Wall. 689; *Barreda* v. *Silsbee*, 21 How. 146; *Shore* v. *Wilson*, 9 Cl. & Fin. 355; *McDonald* v. *Longbottom*, 1 El. & El. 977; *Carr* v. *Montefiore*, 5 B. & S. 407; *Brawley* v. *United States*, 96 U. S. 168.

Now what were the surrounding circumstances, and the light which the parties possessed when this contract was made? The quartermaster-general, who has charge of army transportation, and is familiar with the wants and demands of the government in this respect, advertised that proposals would be received at his office, Chicago, Ill., till 12 M. Tuesday, February 1, 1870, for the transportation of government troops, military, government and Indian stores, supplies, &c., between certain points named on the Missouri River, during the time from March 20, 1870, and October 31, 1870. The claimant submitted proposals in answer to said advertisement, which were accepted, and the contract was made to include all such military, Indian, and government stores, supplies, &c., as may be offered or turned over to him for transportation. The quartermaster-general for the year 1869 made a contract for the transportation of "all the military stores, supplies, &c.," over the same route, and during the same period, in which the Indian supplies were not named, and notwithstanding this the contractor was required by the Indian Bureau and the quartermaster-general to transport the Indian supplies for that year. In view of this fact the quartermaster-general took the precautionary steps, when he made the contract with the claimant for the year following, 1870, and specifically named the Indian supplies, and designated with great particularity the Indian posts and agencies where they were to be transported. The claimant, believing, as he had a right to, that the government was acting in good faith, and intended to turn over all the stores and supplies named in the said advertisement for proposals, and being an experienced steamboat man and entirely familiar with the extent and character of the government trans-

portations on the Missouri River, and the number of pounds usually transported, made his bid correspondingly low, expecting to receive all the stores, supplies, &c., specified in the advertisement which the government required to have transported, and his bid was accepted and the contract made. It is manifest that it was the purpose of both parties that the claimant was to transport all military, Indian, and government stores and supplies over his route during the life of his contract. The employment of other parties by the government to do any part of this work during the contract term made the government responsible in damages. *Caldwell* v. *United States,* 19 Wall. 264, 270. It is true that there is not in the contract any express covenant or agreement on the part of the United States to offer the claimant for transportation any of the said stores or supplies whatever; but where a contract in terms binds a contractor to transport all the freight which the government may offer him, and involves on his part a large preparatory expenditure, and a continual readiness to perform, the law implies a mutual obligation upon the government to give to him all the freight for which it may require transportation by contract. *Speed* v. *United States,* 8 Wall. 77.

III. The United States as principal are bound by the acts and contracts of their agent, done with their consent or by their authority, or adopted by their ratification. The officers and agents of the defendants represented that they had authority to contract with the appellant for the transportation of the Indian supplies, and he in good faith entered into the contract, under the belief that the terms of the contract would be complied with by the defendants; that he would have "any number of pounds of stores and supplies, from and between one hundred thousand pounds and twenty millions pounds in the aggregate, of "all such military, Indian, and government stores, supplies, &c.," which the defendants required to have transported; the appellant accordingly made the necessary preparations to execute his part of the agreement, and did execute it according to its terms, and it was ratified by the defendants, with the exception that they refused to deliver to the appellant all of the Indian supplies for transportation, after they had delivered

part of them according to contract. The rules of law, that a subsequent ratification of an act done as agent is equal to a prior authority, are so well understood as to require no more than a mere statement. The government having derived the benefit of the appellant's low bid as incorporated in the contract, it constitutes a ratification and an adoption thereof. And it is equally well settled that the law upon this subject applies to the act of the sovereign ratifying the acts of its officers. In *Baron* v. *Denman*, 2 Exch. 188, Baron Parke, in giving the opinion, after stating the rule as between individuals, adds: "Such being the law between private individuals, the question is, whether the act of the sovereign ratifying the act of one of its officers can be distinguished. On that subject I have conferred with my learned brethren, and they are decidedly of opinion that the ratification of the crown, communicated as it has been in the present case, is equivalent to a prior command." See also *Secretary of State* v. *Sahaba*, 13 Moore P. C. Sections 219 and 220 Rev. Stat. authorize the Secretary of War to prescribe the general regulations for the transportation of military stores and supplies, &c., for the army, &c. Where a public officer is held out as having authority to do an act, or is empowered in his capacity as a public officer to make the declaration or representation for the government, which is relied on as the substantial ground of relief, the government is bound by the acts and declarations of the agent. *Lee* v. *Monroe*, 7 Cranch, 366, 368; *Whiteside* v. *United States*, 93 U. S. 247.

*Mr. Solicitor-General* for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court. He stated the facts in the language above reported, except so much thereof as is contained between brackets, and continued:

We are of the opinion that the claimant has no cause of action against the United States. The contract did not obligate the government to deliver to him, nor did it bind him to receive, for transportation during the period designated, *all* Indian supplies or stores, in the hands of its agents or officers, of what-

ever department or branch of the public service. It was made with the claimant by an officer of the quartermaster's department under directions from the quartermaster-general of the army. By its first article he became bound to furnish all the steamboat transportation required by the United States for officers and soldiers on the Missouri River between certain named places, and for posts or Indian agencies between certain other named places, at any time from March 20, 1870, to October 31, 1870. He agreed to "receive, at any time during that period, from the officers or agents of the quartermaster's department, at St. Louis, or any point between St. Louis and Fort Benton," mentioned in the tabular statement annexed to the written contract, "all such military, Indian, and government stores, supplies, wagons, and stock as may be offered or turned over to him for transportation, in good order and condition, by said officers or agents of the quartermaster's department, and transport the same with dispatch, and deliver them in like good order and condition to the officer or agent of the quartermaster's department designated to receive them," &c. These words define the nature and extent of the obligations assumed by the contractor. It was entirely competent for the quartermaster's department to enter into an agreement whereby the contractor became bound to receive from its officers or agents all such military, Indian or government supplies as *they* might deliver to him for transportation. But it had no authority, without reference to the views of the Interior Department, and of the officers having special connection with Indian affairs, to control the transportation of Indian supplies or stores of every kind. Nor did the quartermaster's department assume to exercise such authority; for it only stipulated with claimant that he should receive and transport such supplies and stores as were turned over to him by its officers and agents. As, therefore, the claimant was not bound to receive Indian supplies or stores turned over to him for transportation by the Indian Bureau, the employment by the Commissioner of Indian Affairs of others to effect the transportation of Indian stores and supplies —which were never, so far as the record discloses, in charge of the quartermaster's department for transportation—was not

an infringement of his legal rights. There is no escape from this conclusion, unless it be that the quartermaster's department had, under the law, the sole power of making contracts for the transportation of Indian supplies and stores. But that proposition cannot be maintained.

It is, also, contended, that the government, in view of the conduct of its agents, subsequent to the making of the contract with claimant, cannot now be permitted to dispute the proposition, that he was entitled, by his contract, to receive for transportation, during the period designated, all Indian supplies and stores, by whatever department held, which were to be sent to the several Indian posts or agencies designated in that contract.

This proposition arises out of the following facts found by the Court of Claims:

" It does not appear that either the Commissioner of Indian Affairs or the Secretary of the Interior had actual knowledge of the fact that the contract in suit existed with the claimant relating to the transportation of Indian stores and supplies by or through the officers of the quartermaster's department, nor did they expressly authorize General Rucker to enter into a contract for the transportation of Indian stores or supplies, nor did they ratify such contract, unless its ratification be implied from the following facts and circumstances: The Indian Bureau directed that two lots of Indian supplies be forwarded in April and May, 1870, amounting to 221,242 pounds, which was accordingly done by Quartermasters Gillis and Fury, at Sioux City, Iowa, turning them over to the claimant for transportation, and they were by him transported (under his contract with the quartermaster's department to include the transportation of the Indian supplies) to Whetstone and Big Cheyenne agencies, and the Indian Bureau reimbursed the War Department for this transportation. The Commissioner of Indian Affairs and the Secretary of the Interior directed the Secretary of War, June 21, 1870, to turn over the army subsistence stores collected at the instance of the Commissioner of Indian Affairs for the Indians at Forts Rice, Stevenson, Buford, and Shaw to the Indian agents at the Grand River and Fort

Berthold agencies, and that the cost of transporting the stores from the forts to the agencies would be paid by the Indian Bureau. The claimant transported, September 27, 1870, 82,720 pounds of Indian stores and supplies from Fort Rice to Grand River agency, for which he was paid accordingly. The contract in suit was duly filed in the returns office of the Department of the Interior the 12th March, 1870."

These facts give no support to the suggestion that the government recognized claimant's right to transport all Indian supplies for the posts or agencies named in his contract. That contract did not forbid the quartermaster's department from receiving Indian supplies, in the first instance, from the Indian Bureau, and delivering them to the claimant for transportation under his contract. And that which was done in respect of the Indian supplies forwarded in April and May, 1870, and of those transported in September, 1870, to Grand River agency, so far from implying authority in the quartermaster's department to control the whole matter of the transportation of Indian supplies, was a recognition of the authority of the officers, having special charge of Indian affairs, to provide for the transportation of any Indian supplies in their hands. For, the cost incurred in transporting Indian supplies to the Whetstone, Big Cheyenne and Grand River agencies was borne by the Indian Bureau. If the Indian Bureau chose to make arrangements with the War Department for the transportation of certain Indian supplies, under the contract made with the claimant, that fact falls short of proving that the purpose was to grant him the right to transport all Indian supplies, by whatever department or officers held, to the posts or agencies designated in his contract.

We perceive no error in the judgment, and it is

*Affirmed.*